IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MICHAEL S.[1],　　　　　　　　　　　　　　　　No. 3:17-cv-01389-HZ

　　　　　　Plaintiff,　　　　　　　　　　　　　　OPINION & ORDER

　　v.

NANCY A. BERRYHILL, Acting Commissioner,
Social Security Administration,

　　　　　　Defendant.


Sara L. Gabin
SARA L. GABIN, P.C., ATTORNEY AT LAW
14523 Westlake Drive
Lake Oswego, OR 97035

　　Attorney for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
Renata Gowie
ASSISTANT UNITED STATES ATTORNEY
U.S. Attorney's Office, District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 - OPINION & ORDER

Sarah L. Martin
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Michael S. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). For the reasons that follow, the Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on January 10, 2014, alleging an onset date of October 17, 2012. Tr. 201–11.[2] His application was denied initially and on reconsideration. Tr. 90–131, 134–38, 146–51.

On March 3, 2016, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 35–89. On June 21, 2016, the ALJ found Plaintiff not disabled from October 17, 2012 through the date of her decision. Tr. 17–34. The Appeals Council denied review. Tr. 1–5.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on central serous retinopathy, sleep apnea, right knee and right elbow problems, and chronic insomnia. Tr. 90. Plaintiff has a host of other health problems, including: hearing loss, obesity, diabetes, and lumbar disc disease. Pl.'s Br. 2. At the

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 14.

hearing, Plaintiff also alleged he had depression and post-traumatic stress disorder. Tr. 23. Plaintiff was fifty-seven years old at the time of the hearing and was fifty-four years old at the time of his alleged onset date. *Id.* He has a GED along with two welding certifications. Tr. 42–43. His past relevant work experience includes welder supervisor, welder assembler, combination welder, truck assembler, overhead crane operator, and forklift operator. Tr. 29, 67.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. *See, e.g., Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at

141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 22. Next, at step two, the ALJ found that Plaintiff has the following severe impairments: carpal tunnel syndrome of the right hand, hearing loss, and degenerative disc disease. *Id.* However, at step three, the ALJ determined that Plaintiff's impairments do not meet or medically equal the severity of any listed impairment. Tr. 23–24. At step four, the ALJ determined that Plaintiff had the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) with exceptions, including postural, manipulative, and environmental limitations. Tr. 24. The ALJ found Plaintiff can, in an environment with a noise level not exceeding the loud level, perform the following: frequently climb ramps or stairs, stoop, kneel, crouch and climb; occasionally climb ladders, ropes or scaffolds; and frequently handle and finger with the right upper extremity. *Id.* The ALJ

concluded that Plaintiff is able to perform past relevant work as a welder supervisor, welder assembler, combination welder, truck assembler, and overhead crane operator. Tr. 28. In the alternative, the ALJ found at step five that Plaintiff could perform the occupations of laundry worker, janitor, and courtesy clerk. Tr. 30. Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.*

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to properly assign severity findings at step two; (2) failing to properly consider Plaintiff's subjective symptom allegations; and (3) failing to support the RFC finding with substantial evidence.

///

**I.     Non-severe Impairments**

Plaintiff contends that the ALJ erred at step two of the sequential analysis in finding three of Plaintiff's impairments non-severe. Plaintiff maintains that the ALJ's error in finding Plaintiff's serous retinal pigment epithelial detachments and sleep apnea non-severe impairments, and her failure to mention the right knee torn meniscus, affected the ALJ's analysis at step four.

At step two of the analysis, the ALJ considers the medical severity of the plaintiff's impairments. *Gonzales v. Berryhill*, 261 F. Supp. 3d 1085, 1089 (D. Or. 2017) (citing *Yuckert*, 482 U.S. at 140–141 and 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Yuckert*, 482 U.S. at 153–54). Where the plaintiff alleges more than one impairment, the ALJ must consider the combined effect of all the plaintiff's impairments on his ability to perform basic work activities without regard to whether each alone is sufficiently severe. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *Smolen*, 80 F.3d at 1290; *see also* 42 U.S.C. § 423(d)(2)(B), 20 C.F.R. §§ 404.1523, 416.923. An impairment or combination of impairments is severe if it significantly limits the plaintiff's physical or mental ability to do basic work activities and lasts for at least twelve months. 20 C.F.R. §§ 404. 1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is deemed non-severe "if it is merely a 'slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting SSR 96-3p, 1996 WL 374181).

If the ALJ finds that the plaintiff's impairments are non-severe or do not meet the duration requirement, she ends her inquiry and denies the disability claim. *Yuckert*, 482 U.S. at

141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). If the ALJ identifies at least one severe impairment, the analysis proceeds and the ALJ is to take into account all the plaintiff's limitations, regardless of whether they are severe or not. *Howard ex rel. Wolff*, 341 F.3d at 1012 (citing 20 C.F.R. § 416.923); 20 C.F.R. §§ 404.1525(a)(2), (e).

At this step, the plaintiff bears the burden of showing that he has a medically determinable severe impairment or combination of impairments. *Yuckert*, 482 U.S. at 146 n.5. To satisfy step two, the plaintiff must establish the existence of his impairment(s) by providing objective medical evidence from an acceptable medical source; the plaintiff's own statement of symptoms alone will not suffice. *See* 20 C.F.R. §§ 404.1521, 416.921. Once the plaintiff produces objective medical evidence of an underlying impairment or combination of impairments, the ALJ must "consider the claimant's subjective symptom testimony, such as pain or fatigue, in determining severity." *Smolen*, 80 F.3d at 1290; 20 C.F.R. § 404.1529(d)(1), 416.929(d)(1) ("Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, are considered in making a determination as to whether your impairment or combination of impairment(s) is severe.").

In this case, the ALJ found that Plaintiff's serous retinal pigment epithelial detachments and sleep apnea were non-severe and failed to mention his right knee torn meniscus. Tr. 22–23. Citing the objective medical evidence, the ALJ first determined that Plaintiff had three impairments: carpal tunnel syndrome of the right hand, hearing loss, and degenerative disc disease. Tr. 22. Next, the ALJ found that Plaintiff's non-severe impairments, considered singly or together, caused only transient and mild symptoms and limitations, are well controlled with treatment, or are otherwise not adequately supported by medical evidence in the record. Tr. 23. In making this finding, the ALJ noted that the Plaintiff did not allege any limitations due to his

sleep apnea or right knee torn meniscus at the hearing. *Id.* Finally, the ALJ also stated that she considered all of Plaintiff's complaints and their secondary impacts in conjunction with the Plaintiff's severe impairments. *Id.*

### A. Right Knee Torn Meniscus

Plaintiff argues that the ALJ silently disregarded his right knee torn meniscus and was required to make severity findings. Plaintiff was required to produce medical evidence consisting of "signs—the results of 'medically acceptable clinical diagnostic techniques,' such as tests—as well as symptoms" of his knee impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). Here, Plaintiff cites to one page of the record—a progress note from 2011—to indicate that he had surgery for a meniscus and tendon tear in 2008 after some welding equipment fell on his right knee. Tr. 392, 395. As a result of the incident, Plaintiff alleges some chronic arthralgia and takes Motrin when necessary. Tr. 391–92. There is no other mention of this impairment in the objective medical record. The only medical evidence Plaitniff produced was a progress note that pre-dates the relevant time period and which mentions "[r]ight knee in 2008" in a section regarding past surgical history. Tr. 392. There is no objective, contemporaneous record demonstrating an injury, surgery, treatment, or other care regarding this impairment. This passing reference is insufficient to establish his knee impairment at step two. Accordingly, the ALJ did not err by failing to make severity findings as to this impairment.

### B. Vision Impairment and Sleep Apnea

In response to Plaintiff's argument that the ALJ erred in not finding his serous retinal pigment epithelial detachments and sleep apnea non-severe, Defendant contends that there was no error. Even if the ALJ erred, Defendant further contends that her error was harmless. For the purposes of this Opinion only, the Court assumes that Plaintiff's vision impairment and sleep

apnea meet the de minimis standard of severity at step two. However, for the reasons discussed below, the Court agrees with Defendant that the ALJ's error was harmless.

## II.     Plaintiff's Credibility

Plaintiff argues that the ALJ failed to properly consider his symptom testimony. The ALJ engages in a two-step analysis to assess the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms. 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ determines whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. *Smolen*, 80 F.3d at 1282. If such evidence exists and there is no evidence of malingering, the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Id.* at 1284; *see also Lingenfelter*, 504 F.3d at 1036.

When weighing a plaintiff's credibility, the ALJ may consider factors that include: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the plaintiff's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the plaintiff's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). For example, a general assertion that the plaintiff is not credible is insufficient because the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.

1999). Where the ALJ's credibility findings are supported by substantial evidence in the record, the court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

In this case, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that his statements regarding the extent of these symptoms were not credible. Tr. 25. The ALJ provided several reasons for finding Plaintiff's testimony not credible: (1) Plaintiff's complaints regarding three of his impairments were inconsistent with the objective medical record; (2) Plaintiff failed to pursue treatment for his back impairment until after he stopped work and failed to obtain photodynamic therapy for his vision impairment; and (3) Plaintiff's complaints concerning his limitations were inconsistent with his activities of daily living. Tr. 25–27.

A. Inconsistency with the Medical Evidence

"The ALJ is responsible for determining credibility[.]" *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The ALJ may reject a plaintiff's allegations if the "statements at [the] hearing do not comport with the objective medical evidence in [the] record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). Inconsistency between a plaintiff's symptom allegations and objective medical evidence is a clear and convincing reason to reject a plaintiff's credibility. *Shaw v. Berryhill*, No. 6:16-CV-02188-PK, 2018 WL 1406601, at *9 (D. Or. Jan. 23, 2018), *report and recommendation adopted*, No. 6:16-CV-02188-PK, 2018 WL 1402587 (D. Or. Mar. 19, 2018); *see also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

///

///

1. Vision Impairment

At the hearing, Plaintiff testified that one of the reasons that he is unable to work is because his vision impairment prevents him from doing his job correctly as a welder. Tr. 47. Plaintiff testified that his vision issues were so pronounced as to create problems with welding straight lines and seeing tape measures. Tr. 55. His coworkers had to redo some of his work because he made mistakes due to his vision impairment, which ultimately led to his termination. Tr. 43, 55. He no longer drives due to his vision distortions and blind spots. Tr. 54.

The ALJ found that Plaintiff's vision distortion was intermittent and mild with his visual acuity consistently described as good or excellent. Tr. 26. Because Plaintiff was not interested in pursuing photodynamic therapy for his vision problem, the ALJ found that Plaintiff's disinterest was inconsistent with the alleged severity of his symptoms. *Id.*

Here, the ALJ correctly noted that the objective medical evidence consistently showed: (1) Plaintiff's physicians described his vision as "great" upon examination; (2) Plaintiff refused photodynamic therapy; and (3) Plaintiff no longer qualifies for photodynamic therapy based on his continued stable vision. Tr. 418, 420–21, 501. The ALJ was justified in finding that Plaintiff's consistent "great" visual acuity combined with his failure to pursue treatment, compounded with the fact that he does not qualify for any sort of treatment for his vision beyond glasses, was inconsistent with the severity of symptoms Plaintiff described.

2. Back Impairment

At the hearing, Plaintiff testified his back impairment interfered with his welding because he was unable to hold a comfortable position. Tr. 47, 56. Plaintiff testified that his back impairment first started bothering him in the late 1990s or early 2000s. Tr. 55. He said that he could be incapacitated for up to a week at a time if he twists, steps, or picks something up

incorrectly at work. *Id.* According to Plaintiff, his daily pain medication "only really help[s] about 50 percent of the way." Tr. 50. Even with medication, Plaintiff described his pain level as a five and stated that it jumps to a seven or eight for four or five hours per day. Tr. 56. As to his limitations, Plaintiff said he can sit or stand for about forty minutes at a time and must lay down for sixty to ninety minutes each day. Tr. 56–59. Plaintiff explained that standing is more difficult for him than walking. Tr. 59. Plaintiff then admitted that his prescribed cane helps with his back impairment. Tr. 60.

The objective medical evidence reflects that Plaintiff has degenerative changes of his lower lumbar spine, bilateral pars interarticularis defects of L5, and moderate to several neural foramina stenosis. Tr. 534, 553. However, improvement with conservative treatment is a convincing reason to discount a plaintiff's allegation of disabling symptoms. *See Tommasetti*, 533 F.3d at 1040 (noting that the record reflected that the plaintiff's positive response to conservative treatment that included physical therapy, medication, a TENS unit, and a lumbosacral corset undermined his reports regarding the disabling nature of his pain). The ALJ noted that Plaintiff rated his back pain a two to three out of ten after he started physical therapy and was prescribed a cane along with a TENS unit in 2015. Tr. 25–26 (citing 549, 562, 570) (describing Plaintiff's prescribed treatment and subjective reports of decreased pain and increased function in response to his treatment). The ALJ, therefore, reasonably relied on Plaintiff's positive response to conservative treatment to discount his subjective symptom testimony regarding his back impairment. Furthermore, as a testament to the success of his conservative treatment, Plaintiff has increased his activities of daily living, which is discussed more below.

///

B. Failure to Pursue Treatment

Lack of treatment for an alleged impairment is "powerful evidence" that can be used to discount a plaintiff's credibility. *See Burch*, 400 F.3d at 681 (affirming the ALJ's decision to partially discredit the plaintiff's back pain testimony for lack of consistent treatment). While Plaintiff testified that he has suffered from chronic back pain since the late 1990s or early 2000s, the ALJ was correct to point out that Plaintiff failed to treat for any symptoms until 2015. Tr. 25. Because Plaintiff did not complain of or treat any symptoms related to his degenerative disc disease until over two years after he stopped working, the ALJ found that this evidence suggested his symptoms "were not as severe as he has alleged at that time nor did they prevent him from working." *Id.* Furthermore, because Plaintiff was not interested in pursuing photodynamic therapy for his vision problem when he was still eligible for it, the ALJ found that Plaintiff's disinterest was inconsistent with the alleged severity of his symptoms. Tr. 26. The record supports the ALJ's finding that Plaintiff's failure to pursue treatment undermined his subjective allegations.

C. Activities of Daily Living

There are two grounds for using daily activities to form the basis of an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The first ground is whether the plaintiff's activities meet the threshold for transferable work skills. *Id.* The second ground, which is at play here, allows the ALJ to discredit the plaintiff if his daily activities are inconsistent with his alleged symptoms. *Id.*; *Molina*, 674 F.3d at 1112. "Daily activities that are inconsistent with alleged symptoms are a relevant credibility consideration because they bear on the plaintiff's ability to tell the truth." *Caldwell v. Astrue*, 804 F. Supp. 2d 1098, 1103 (D. Or. 2011) (citing *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir.2001)). A plaintiff does not need

to "vegetate in a dark room in order to be eligible for benefits[.]" *Molina*, 674 F.3d at 1112 (citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987)). However, "[e]ven where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the [plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113 (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)).

Both at the hearing and in his function report, Plaintiff explained his daily activities. In the mornings, Plaintiff completes his physical therapy exercises for his lower core and back. Tr. 52. In the afternoons, Plaintiff completes additional physical therapy exercises for his back. *Id.* Plaintiff aims for sixty minutes of walking per day. *Id.* Plaintiff also testified that he does the dishes, helps clean the house, and shops. Tr. 53. Indeed, he can take care of his brother's dog along with his wife, has no problems with personal care, takes out the garbage and recycling, and mows the lawn with a riding lawn mower. Tr. 259–61. Plaintiff testified he has not hunted or fished in a couple of years because "it hurts [him] too bad." Tr. 53–54. By contrast, in his function report, he stated that he hunts and fishes as much as his physical limitations allow, qualifying that it is difficult for him to carry his rifle or fishing pole for long periods, read maps, tie fishing knots, and walk long distances. Tr. 262.

Here, the ALJ found that Plaintiff's allegations of disabling symptoms and limitations were inconsistent with his daily activities. Tr. 27. For example, Plaintiff reported he is able to care for his personal care needs independently, prepare meals, clean, sweep, do the dishes, take out the garbage, complete some yard work, and mow the lawn with a riding lawn mower. *Id.* The ALJ also found that Plaintiff is "quite physically active" because he completes physical therapy and walks in the morning and afternoon, sometimes up to two miles. *Id.* Notably, the

ALJ found that Plaintiff had testified he had not hunted or fished in two years but indicated in April 2014 that he hunted and fished well. *Id.* However, the ALJ noted that Plaintiff indicated he had difficulties with those hobbies because of his impairments, including: holding the rifle and fishing pole for long periods, walking long distances, reading maps, and tying knots. *Id.*

Plaintiff argues that the ALJ erred because none of Plaintiff's daily activities are transferrable to a work setting. This argument fails because, as noted above, the ALJ may rely on Plaintiff's daily activities to discredit his symptom testimony without establishing transferability to a competitive work environment.

The Court finds that the ALJ reasonably concluded that Plaintiff's daily activities undermine his credibility because they are inconsistent with his alleged symptoms of disabling pain and functional limitations. For example, Plaintiff's ability to hunt, fish, and complete yard work as well as a variety of household and personal tasks independently despite his testimony that his back prevents him from holding a comfortable position is indicative of the inconsistency with his subjective symptoms. Accordingly, the inconsistencies between Plaintiff's daily activities and his testimony meet the requirement of a clear, convincing, and specific reason to discredit Plaintiff's testimony regarding his impairments. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (affirming the ALJ's adverse credibility determination where the plaintiff claimed he was unable to return to work because of pain yet testified that he tended to his animals, walked outdoors, went out for coffee, and visited with neighbors).

D. Overall Credibility Finding

The Ninth Circuit has held that an ALJ errs where she fails to identify testimony she found not credible and does not link that testimony to the particular parts of the record

supporting her adverse credibility determination. *Brown-Hunter*, 806 F.3d at 494. In this case, contrary to Plaintiff's suggestion that the ALJ merely summarized the medical evidence, the ALJ specified which testimony she found not credible, noting that Plaintiff was inconsistent regarding his back, vision, and right carpal tunnel syndrome.[3]

Based on the above, Plaintiff's inconsistent testimony, daily activities, and the objective medical evidence permitted the ALJ to discount Plaintiff's credibility. The ALJ gave clear and convincing reasons for discounting portions of Plaintiff's testimony, and substantial evidence supports those reasons. Therefore, this Court upholds the ALJ's credibility finding.

As previously mentioned, Plaintiff's vision impairment and sleep apnea are assumed to be severe at step two. But the ALJ ultimately rejected Plaintiff's subjective symptom testimony by giving clear and convincing reasons supported by substantial evidence. Given that the RFC accounted for the Plaintiff's limitations that the ALJ found credible, the ALJ's error in finding these impairments non-severe was harmless. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (the ALJ's RFC need include only "those limitations for which there is record support" and does not need to analyze conditions or impairments found non-credible); *see also Batson*, 359 F.3d at 1197 (the ALJ is not required to incorporate subjective limitations which the ALJ properly found non-credible into the RFC).

### III. RFC Finding

Plaintiff contends that the ALJ lacked substantial evidence for her RFC determination because the ALJ did not properly develop the record as to Plaintiff's retinal, lumbar, sleep apnea, and knee impairments. Defendant counters that Plaintiff merely repeats his earlier arguments

---

[3] Plaintiff also makes the argument that the ALJ did not properly develop the record with regard to his lumbar and vision impairments, but the Court rejects this argument because the record was neither ambiguous nor inadequate. *See Mayes v. Massanari*, 276 F.3d 453, 460–61 (9th Cir. 2001) (noting that the plaintiff must prove she is disabled and cannot shift her own burden to the ALJ by virtue of the ALJ's duty to develop the record).

16 - OPINION & ORDER

that the ALJ erred in considering his impairments at step two. The Court agrees with Defendant. An ALJ must propose a hypothetical based on medical assumptions supported by substantial evidence in the record that reflects each of the plaintiff's limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–64 (9th Cir. 2001) (citing *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995)). Because the Court affirms the ALJ's decision to reject Plaintiff's symptom testimony, there is no error in the ALJ's RFC or hypothetical.

## CONCLUSION

Based on the foregoing, the Court affirms the Commissioner's decision.

IT IS SO ORDERED.

Dated this 12 day of Sept, 2018.

/s/ Marco Hernández
MARCO A. HERNÁNDEZ
United States District Judge

17 - OPINION & ORDER